# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| OLIPHANT FINANCIAL, LLC, <br><br> Movant, <br><br> v. <br><br> KARI MAKURAT, <br><br> Respondent. | CASE NO. _____ <br><br> COMPLAINT TO COMPEL ARBITRATION |

## COMPLAINT TO COMPEL ARBITRATION

COMES NOW, Oliphant Financial, LLC ("Oliphant" or "Movant") and files this Complaint to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. 4, and in support, states as follows:

## INTRODUCTION

1. This Complaint involves a case currently pending in the Circuit Court of Milwaukee County, where Respondent, as Plaintiff, alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("the FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA"). Respondent, though, executed a binding arbitration agreement regarding the account that is the subject matter of that state court action. This Complaint is brought to compel Respondent to arbitrate her claim pursuant to 9 U.S.C. § 4.

## PARTIES, JURISDICTION, AND VENUE

2. Movant, Oliphant, is a limited liability company with its primary offices located at 1800 2nd Street, Suite 603, Sarasota, Florida, 34236.

3. By information and belief, Respondent Kari Makurat ("Respondent") is an individual person who resides in Milwaukee County.

4. This Court has jurisdiction over this matter pursuant to 9 U.S.C. § 4 (right to petition court to compel arbitration), and 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

5. 9 U.S.C. § 4 creates a cause of action in this Court if the Court, save for the agreement, "would have jurisdiction under title 28" in a civil matter concerning the underlying subject matter of the request

6. This Court would have original Federal Question jurisdiction over the underlying matter, pursuant to 28 U.S.C. § 1331, in that Plaintiff's claim in the state court involves allegations that Oliphant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("the FDCPA"). This Court would have supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Therefore, this Court would have jurisdiction over this matter pursuant under title 28.

7. Federal Question Jurisdiction over this matter thus arises under 28 U.S.C. § 1331, as this Complaint is filed pursuant to a federal statute.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that the state court action that is the subject of this matter is pending in Milwaukee County, and because a substantial part of the events alleged in the state court complaint allegedly occurred in Milwaukee County.

## FACTUAL ALLEGATIONS

9. Prior to the events that are the subject of the underlying action, Plaintiff took out a loan from WebBank through its website Lendingclub.com ("the Account"), by and through a Borrower Agreement (attached as Exhibit 1A) and Promissory Note (attached as Exhibit 1B (together, "the Loan Agreement").

10. The Loan Agreement states that it is governed by federal law and the laws of the State of Utah. Ex. 1A at p. 4, § 19.

11. The Loan Agreement contains the following language:

Either party to this Agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 21 (the "Arbitration Provision"), unless you opt out as provided in section 21(b) below.

Ex. 1A at p. 4, § 21(a) ("the Arbitration Clause").

12. The Arbitration Clause defines "claim" as

any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any subsequent holder (or persons claiming through or connected with us and/or the subsequent holders), on the other hand, relating to or arising out of this Agreement, any Loan Agreement and Promissory Note(s), the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 21(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement.

*Id*.

13. The Arbitration Clause continues:

Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counterclaims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

*Id*.

14. The Loan Agreement further states:

Lender may, without notice to Borrower, assign all of its right, title and interest in this Note to any other third party, and Borrower further understands, acknowledges and agrees that any assignee may sell, assign or transfer the Note and all associated documents and information related to the Note without Borrower's consent or delivery of notice (subject in each case to the registration requirement above). Borrower may not assign this Note without the prior written consent of Lender. This Note inures to the successors, permitted assigns, heirs and representatives of Borrower and Lender. . . . This Note is subject to the arbitration provisions of the Borrower Agreement between Lender and Borrower, which is incorporated by reference into this Note.

Ex. 1B at p. 8.

15. On September 29, 2017, LendingClub, the original party to the Loan Agreement, sold the Account to Movant, via the Account Purchase Agreement – Forward Flow, attached hereto as Exhibit 2. ("the Forward Flow Agreement").

16. For purposes of that sale, the Forward Flow Agreement defines the term "Accounts" as "certain charged-off consumer loan receivables sold by Investors, with such sale being facilitated by Seller, and purchased by Buyer under this Agreement[.]" *Id.* at p. 3. This provision continues:

> The Accounts purchased by Investors and facilitated by Seller and the Initial Creditor are governed by the terms of the Loan Agreement and any additional agreements agreed to by Obligor at the time of loan origination by Initial Creditor.

*Id.*

17. Pursuant to the Forward Flow Agreement, LendingClub agreed to sell "all right, title and interest in and to the Accounts[.]" Ex. 2 at § 2.1.

18. The Forward Flow Agreement also states: "On each Closing Date, all rights, obligations, liabilities and responsibilities with respect to the servicing of the Accounts sold to Buyer on such date shall pass to Buyer, and Seller, Investors and/or any of their servicing agents shall be discharged from all liability therefore." Ex. 2 at § 4.2.

19. On February 10, 2023, Respondent filed a lawsuit against Movant in the Circuit Court of Milwaukee County, State of Wisconsin, Case No. 2023CV001117. A true and correct copy of Respondent's state court filing is attached hereto as Exhibit 3.

20. The allegations of Respondent's state court complaint involve the Account and Oliphant's alleged efforts to collect the Account. *See* Ex. 3 at p. 14.

21. The state court complaint alleges Oliphant uses the mail and telephone in furtherance of its debt collection business.

22. The state court complaint further alleges Oliphant sent a letter from its headquarters in Sarasota, Florida, to Respondent in Wisconsin, in an attempt to collect the debt.

23. Notice of Oliphant's intent to file this Complaint was served on counsel for Respondent on June 27, 2023.

**FIRST CAUSE OF ACTION:**
**TO COMPEL ARBITRATION**

24. Movant repeats and reincorporate all previous paragraphs as if fully set out herein.

25. Under the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

26. In Utah, "[a]n agreement to arbitrate is enforceable only if it binds the party whose submission to arbitration is sought, and the dispute to be arbitrated falls within the scope of the agreement." *HITORQ, LLC v. TCC Veterinary Servs., Inc.*, 502 P.3d 821, at ¶ 24 (Utah 2021) (internal quotations and alterations omitted).

27. "It is the policy of the law in Utah to interpret contracts in favor of arbitration, in keeping with our policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 606 (Utah 2002) (internal quotations and alterations omitted). Utah courts interpret arbitration agreements "keeping in mind our policy of encouraging arbitration." *Id*.

28. "[A] court deciding a motion to compel arbitration must first determine whether the parties agreed to arbitrate, and if so, whether the agreement encompasses the claims asserted." McCoy v. Blue Cross & Blue Shield of Utah, 980 P.2d 694, 697 (Utah Ct. App. 1999).

29. There is currently a dispute between the parties pending in the Circuit Court of the State of Wisconsin.

30. The Arbitration Clause is written, valid, and enforceable as to Respondent because Respondent is a party to the Loan Agreement.

31. The Parties to the Loan Agreement clearly agreed to arbitrate disputes under that agreement.

32. In the state court case, Respondent has alleged that the dispute relates to interstate commerce, in that Respondent alleges Oliphant uses the mails and telephone in furtherance of its business, and that Oliphant used the mails to collect a debt by sending a letter from its headquarters in Sarasota, Florida, to Respondent in the State of Wisconsin.

33. The Forward Flow Agreement, by and through the clauses laid out above in paragraphs 14-16, transferred the rights and obligations under the Loan Agreement, including the Arbitration Clause, to Oliphant.

34. Pursuant to the Forward Flow Agreement, Oliphant has the right to enforce the Arbitration Clause.

35. The allegations of Respondent's state court complaint fall within the definition of "claim" for purposes of the Arbitration Clause, in that her allegations constitute a "past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement, any Loan Agreement and Promissory Note(s), the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing." Ex. 1A at § 21(a).

36. Specifically, Respondent's claims regard a letter allegedly sent by Oliphant to collect on the Account. This letter clearly is "relating to or arising out of this [Loan] Agreement[.]" *Id*.

37. As a result, it is clear the parties agreed to arbitrate claims like those alleged in Respondent's state court complaint.

38. Despite this written and enforceable agreement to arbitrate, Respondent has failed and refused to arbitrate this matter. Specifically, Respondent has filed an action in state court. Further, when Oliphant has requested that Respondent proceed, instead, in arbitration, Respondent has refused in that Respondent has claimed the Arbitration Clause is not applicable.

39. Accordingly, Oliphant seeks the relief permitted under 9 U.S.C. § 4, and requests this Court enter "an order directing that such arbitration proceed in the manner provided for in [the Loan A]greement." 9 U.S.C. § 4.

## PRAYER FOR RELIEF

WHEREFORE Movant Oliphant requests this court:

a. Enter an order compelling Respondent to arbitrate the claim that is the subject of her state court complaint; and

b. For its costs and fees incurred in order to enforce the Arbitration Clause; and

c. For such other relief as this Court deems just and proper.

**[SIGNATURES AND SERVICE ON FOLLOWING PAGE]**

Dated: July 20, 2023                                  Respectfully Submitted,

**MARTIN LYONS WATTS MORGAN PLLC**

*Attorneys for Defendant*

By: /s/ PATRICK A. WATTS
Patrick A. Watts, Mo. Bar No. 61701
1200 S. Big Bend Blvd.
St. Louis, Missouri 63117
pwatts@mamlaw.com
P: (314) 669-5490
F: (888) 632-6937

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via electronic mail on counsel for Plaintiff, at jblythin@ademilaw.com, on July 20, 2023.

By: /s/ Patrick A. Watts